Mark L. McAFEE, Eric A. McAfee, Adam M. McAfee, and Andrew M. McAfee, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 99–94 C.

United States Court of Federal Claims.

March 31, 2000.

Timothy D. McCollum, Fresno, CA, for Plaintiffs.

Lee J. Freedman, Washington, DC, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Bryant G. Snee, for Defendant. Larry Hom, Department of Agriculture, and Edmund Brennan, Office of United States Attorney, Eastern District of California, of counsel.

**430**

## ORDER

MOODY R. TIDWELL, Senior Judge.

This case is currently before the court on defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, or, in the alternative, failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). Plaintiffs in this action, Mark McAfee, Eric McAfee, Adam McAfee and Andrew McAfee, allege that Mark McAfee contracted orally with the United States, acting through the Department of Justice and/or Department of Agriculture, to provide services as an intermediary in settlement negotiations between the United States and his father, Rodger McAfee, in exchange for forgiveness of over $400,000 of Farm Services Administration (FSA) loans held on 405 acres of property in Fresno County, California. For the reasons set forth below, defendant's motion to dismiss for (1) lack of subject matter jurisdiction is denied-in-part and (2) failure to state a claim is granted.

## BACKGROUND

This case concerns the alleged formation of an oral express, or in the alternative, implied-in-fact, contract between plaintiff, Mark McAfee, and the United States. On or about October 23, 24 and November 7, 1996, Daniel Bensing, an Assistant United States Attorney (AUSA), contacted and met with Mark McAfee in connection with litigation in which the United States sought to foreclose on plaintiffs' father's, Rodger McAfee, property located in El Nido, California.[1] *United States v. Rodger McAfee*, No. CV–F–96–5720–AWI–SMS (E.D. Cal. filed June 27, 1996). At the meeting, Mark McAfee advised Daniel Bensing that Rodger McAfee may respond violently to the imminent foreclosure. Both plaintiffs and defendant dispute the outcome of the meetings. Plaintiffs allege that Daniel Bensing, with the approval and/or ratification of Charles Stevens, United States Attorney (USA), and concurrence of FSA officials, requested that Mark McAfee assist in the termination of Rodger's Rebellion by (1) going to the property; (2) determining the presences, types and quantities of weaponry and ammunition; and (3) convincing Rodger McAfee to transfer the El Nido property to a nonprofit corporation in settlement of the litigation in *United States v. Rodger McAfee*, No. CV–F–96–5720–AWI–SMS. The government contends that Mark McAfee offered to act as an intermediary between Rodger McAfee and Daniel Bensing. Plaintiffs also allege that Daniel Bensing, with the approval and/or ratification of Charles Stevens, agreed to forgive a $400,000 FSA loan held on plaintiffs' property in exchange for Mark McAfee's assistance in settling the matter.[2] The government denies that (1) the United States entered into the purported contract; (2) the lien was to be removed from plaintiffs' property pursuant to any contract; (3) Charles Stevens or the FSA officials possessed the requisite authority to enter into such a contract; and (4) Charles Stevens approved and/or ratified Mark McAfee's assistance in obtaining the information and transfer of the property to a nonprofit corporation.

The parties do not dispute that Mark McAfee did in fact (1) report to the Department of Justice (DOJ) and the United States Marshalls the extent to which Rodger McAfee had fortified his property; (2) submit a list of potential trustees to the DOJ to be approved for the nonprofit corporation; and (3) obtained Rodger McAfee's signature to a

---

1. The purpose of the foreclosure action was to satisfy the then outstanding balance of approximately $4,475,028 on farm emergency loans granted to Rodger McAfee by the Farm Services Administration (FSA) in 1978. Rodger McAfee, in response to the foreclosure action, allegedly threatened to provoke an armed confrontation (Rodger's Rebellion) and thereafter obtained the service of the San Joaquin Valley Militia, "hardened" the house and acquired substantial weaponry and ammunition.

2. In plaintiffs' response, plaintiffs argued that the United States agreed to remove the FSA loans from their property if Mark McAfee would assist in negotiating a peaceful resolution between the United States and Rodger McAfee, which differs from plaintiffs' initial allegations in the complaint that United States agreed to remove the FSA loans from their property if Mark McAfee would assist the government terminate the litigation by convincing Rodger McAfee to transfer the El Nido property to a nonprofit corporation.

stipulation of enlargement of time for Rodger McAfee to respond to the government's complaint in *United States v. Rodger McAfee,* No. CV–F–96–5720–AWI–SMS. Consequently, plaintiffs claim that Mark McAfee completely performed his part of the agreement for the benefit of himself and the other plaintiffs by negotiating a peaceful resolution of the dispute between the United States and Rodger McAfee by obtaining Rodger McAfee's consent to transfer the El Nido Property to a nonprofit charitable organization approved by the DOJ. Next, plaintiffs allege that on March 4, 1997, after complete performance, Mary Grad, Civil Chief, repudiated, breached or canceled the contract. Defendant contends that no contract was formed and denies that Mary Grad repudiated, breached or canceled the purported contract. Finally, plaintiffs, without naming specific individuals, allege that at all times the acts of the agents of the United States were ratified by duly authorized individuals.

## PROCEDURAL HISTORY

Plaintiffs filed the instant complaint on March 1, 1999, which was later amended on March 24, 1999, after receiving written notice from the FSA of intent to foreclose on plaintiffs' property located in Fresno County, California. Plaintiffs' sole claim is that defendant breached an express contract or, in the alternative, an implied-in-fact contract, to release federal liens held on their agricultural property. Plaintiffs request that the court (1) prohibit the United States from proceeding with its intended foreclosure; (2) specifically enforce the contract, or in the alternative, award damages equal to the amount of the loan; and (3) declare that the contract is valid, binding, and enforceable against the United States. On November 5, 1999, defendant moved to dismiss the complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(4). Additionally, defendant moved to dismiss for lack of subject matter jurisdiction (1) the claims of Eric McAfee, Adam McAfee and Andrew McAfee based on lack of privity of contract with the government and (2) the portions of the complaint that request declar-

atory and injunctive relief and specific performance as remedies not available in this court.

## DISCUSSION

This case is currently before the court on defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, or, in the alternative, failure to state a claim upon which relief can be granted. The distinction between a motion to dismiss for failure to state a claim upon which relief can be granted and a motion to dismiss for lack of subject matter jurisdiction is well established. *See Gould, Inc. v. United States,* 67 F.3d 925 (Fed.Cir.1995); *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679 (Fed.Cir. 1992); *Do–Well Mach. Shop, Inc. v. United States,* 870 F.2d 637 (Fed.Cir.1989). A dismissal for lack of subject matter jurisdiction essentially means that the subject-matter of the dispute is one that the court is not empowered to hear and decide. *See Gould, Inc.,* 67 F.3d at 929 (citing *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679 (Fed.Cir. 1992)). In contrast, a dismissal for failure to state a claim is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief. *See Gould, Inc.,* 67 F.3d at 929 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Naturally, the court must assume jurisdiction over a claim in order to decide whether the allegations state a cause of action on which the court can grant relief and to determine issues of fact arising in the controversy. *See Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 639 (Fed.Cir.1989) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

## I. Subject Matter Jurisdiction

In its complaint, plaintiffs' sole claim is that defendant breached an express contract or, in the alternative, an implied-in-fact contract, to release federal liens held on their agricultural property. In support of the claim, plaintiffs allege: (1) that the United States enlisted Mark McAfee's assistance as an intermediary in settlement negotiations in *United States v. Rodger McAfee,* No. CV–F–

96–5720–AWI–SMS; (2) in exchange for Mark McAfee's services, the United States agreed to forgive FSA loans held on plaintiffs' property; (3) Mark McAfee performed according to the agreement; (4) Daniel Bensing, AUSA, with Charles Stevens' approval and/or ratification, was authorized to contract in this manner with Mark McAfee; and (5) that the government breached the contract when Mary Grad, Civil Chief, canceled and/or repudiated the contract and when the FSA initiated foreclosure proceedings on plaintiffs' property.

The initial issue is whether plaintiffs' claim of breach of contract falls within this court's subject matter jurisdiction. There is no question that the Court of Federal Claims is empowered to hear cases based "upon any express or implied contract with the United States" pursuant to the Tucker Act's grant of jurisdiction. 28 U.S.C. § 1491(a) (1994 & Supp. III 1997); *see Sallee v. United States*, 41 Fed.Cl. 509, 512 (1998). Additionally, the Federal Circuit has held that a well pleaded allegation of an express, or implied-in-fact, contract in a complaint "is sufficient to overcome challenges to jurisdiction" in the United States Court of Federal Claims. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997) (citing *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679 (Fed.Cir. 1992)); *see also City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998); *Buesing v. United States*, 42 Fed.Cl. 679, 687 (1999).

■ A well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract. The general requirements to establish a binding contract with the United States are identical for both express and implied contracts. *See City of Cincinnati*, 153 F.3d at 1377; *Trauma Serv. Group*, 104 F.3d at 1325; *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990); *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976); *Garza v. United States*, 34 Fed.Cl. 1, 14 (1995). In order to establish a valid contract with the government, plaintiff must show "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract."[3] *Total Med. Management, Inc. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir.1997)(citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990)).

■ In the instant case, plaintiffs' complaint, when viewed in a light most favorable to plaintiffs, alleges the existence of the requisite elements for either an express contract or, alternatively, for an implied-in-fact contract. It is well established that, for this court to have jurisdiction, a valid contract need only be pleaded, not proven. *See Total Med. Management*, 104 F.3d at 1319 (citing *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995) and *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir. 1992)); *see also Trauma Serv. Group*, 104 F.3d at 1325. The court finds that plaintiffs' claim of express, or in the alternative, implied, contract falls clearly within this court's subject matter jurisdiction. Accordingly, defendant's motion to dismiss the claim for lack of subject matter jurisdiction is denied.

Additionally, defendant moved to dismiss for lack of subject matter jurisdiction (1) the claims of Eric McAfee, Adam McAfee and Andrew McAfee and (2) the portions of the complaint that request declaratory and injunctive relief and specific performance. First, defendant argues that Eric McAfee, Adam McAfee and Andrew McAfee should be dismissed from the action based on this court's jurisdictional prerequisite of privity of contract because the named plaintiffs are neither parties to the purported contract nor intended third-party beneficiaries to the contract as alleged.

■ Privity of contract is "an undisputed prerequisite" for standing to sue in this court under the Tucker Act. *National Leased Hous. Ass'n v. United States*, 105 F.3d 1423,

---

**3.** An implied-in-fact contract differs from an express contract in that an implied-in-fact contract arises when an express offer and acceptance are missing but the parties' conduct indicates mutual assent. *See City of Cincinnati*, 153 F.3d at 1377 (citing *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)).

1435 (Fed.Cir.1997); *see Sallee v. United States,* 41 Fed.Cl. 509, 512 (1998). To establish privity of contract, Eric McAfee, Adam McAfee and Andrew McAfee must show a contractual relationship between themselves and the government. Plaintiffs concede that Eric McAfee, Adam McAfee and Andrew McAfee were not parties to the purported contract and did not assist Mark McAfee in performing the contract. Rather, plaintiffs argue that their claims are properly before the court as third-party beneficiaries of the contract.

 To avoid the privity requirement and demonstrate jurisdiction in this court, plaintiffs may assert the status of intended third-party beneficiary to the contract. *See Maniere v. United States,* 31 Fed.Cl. 410, 417 (1994) (citing *Blaze Constr. v. United States,* 27 Fed.Cl. 646, 651 (1993)); *see also Sallee,* 41 Fed.Cl. at 512. To determine third-party beneficiary status, the court must consider whether or not the contract reflects the express or implied intention of the parties to benefit the party claiming third-party beneficiary status. *See Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997) (adopting the third-party beneficiary test as described in *Schuerman v. United States,* 30 Fed.Cl. 420, 433 (1994)); *see also Sallee,* 41 Fed.Cl. at 513. In *Montana v. United States,* the Federal Circuit explained that an intended third-party beneficiary does not have to be specifically or individually identified in the contract, but the third-party beneficiary must fall within a class clearly intended to be benefitted by the contract. *Montana,* 124 F.3d at 1273. One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him. *Id.* Therefore, the court must determine whether Eric McAfee, Adam McAfee and Andrew McAfee could have reasonably relied on defendant's promise to forgive the FSA loans as intending to confer a right on them.

Plaintiffs contend that, although not specifically or individually identified in the contract, all of the fee simple owners of the property, Mark McAfee, Eric McAfee, Adam McAfee and Andrew McAfee, were intended to benefit by the contract and that the government was "fully informed of the fact that its obligation ran to all persons on title to the property". Defendant argues that plaintiffs failed to allege that any government representative intended to contract with them or that any government official even knew that Eric McAfee, Adam McAfee and Andrew McAfee were obligees of the FSA loan. Therefore, defendant maintains that Eric McAfee, Adam McAfee and Andrew McAfee are incidental beneficiaries of the putative contract.

 The court concedes that a promise to remove the FSA liens on plaintiffs' property would clearly benefit each of the plaintiffs in this case, however, the real question is whether or not the contract reflects the express or implied intention of Mark McAfee and the government to benefit Eric McAfee, Adam McAfee and Andrew McAfee. If a contract arose as plaintiffs allege, the express intention of the parties was to relieve the entire amount of the loan from the property to the direct benefit of Mark McAfee, however, the implied intention of the contracting parties would be to benefit all four plaintiffs in this case. For the reasons stated above, the court is of the opinion that each of the plaintiffs may maintain this action against the government based upon the alleged contract. Accordingly, defendants motion to dismiss certain plaintiffs from the case is denied.

 Next, defendant moved to dismiss for lack of subject matter jurisdiction the portions of the complaint that request declaratory and injunctive relief and specific performance. Defendant contends that plaintiffs' requested relief that is not available in this court. The jurisdictional statutes governing the Court of Federal Claims grant authority to the court to issue judgments for money against the United States. *See* 28 U.S.C. § 1491 (1994 & Supp. III 1997). In certain limited circumstances, the court is specifically authorized by statute to issue injunctions or declaratory judgments, however, those circumstances are not present in this case. *See, e.g.,* 28 U.S.C. §§ 1491(a)(2) and (b)(2) (1994 & Supp. III 1997); *see also United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d

52 (1969); *National Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir.1998). Plaintiffs' complaint also requests specific performance, another remedy this court is not empowered to grant. *See Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed. Cir.1994); *National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 198 (Fed.Cir. 1997). This court, therefore, is without jurisdiction to entertain plaintiffs' claims for specific performance and declaratory and injunctive relief. Accordingly, the portions of plaintiffs' complaint that seek specific performance and declaratory and injunctive relief are without foundation for relief in this court and must be dismissed.

In sum, the court (1) denies defendant's motion to dismiss plaintiffs' claim of breach of express, or in the alternative, implied, contract; (2) denies defendant's motion to dismiss the claims of Eric McAfee, Adam McAfee and Andrew McAfee; and (3) grants defendant's motion to dismiss the portions of plaintiffs' complaint that seek specific performance and declaratory and injunctive relief.

## II. Failure to State a Claim Upon Which Relief Can Be Granted

Having decided that plaintiffs' claim falls within this court's subject matter jurisdiction, the court must now decide whether plaintiffs' complaint stated a claim upon which relief can be granted. To prevail over a 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted, plaintiff must state facts that, if proven, would allow him to prevail. A claim should not be dismissed unless "it is beyond a doubt" that a plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, when a plaintiff is unable to assert a set of facts supporting the claim, the motion to dismiss should be granted. *See Chang v. United States*, 859 F.2d 893, 894 (Fed.Cir.1988). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true, *Reynolds v. Army and Air Force Exch. Serv. v. United States*, 846 F.2d 746, 747 (Fed.Cir.1988), and construe the facts in the complaint in the light most favorable to plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order to defeat defendant's motion, plaintiffs must state facts going to each of the elements of a binding contract that, if proven, would permit plaintiffs to prevail under either contract theory. *See Trauma Serv. Group*, 104 F.3d at 1325–27. To establish a valid contract with the government, plaintiff must state facts demonstrating "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Total Med. Management, Inc.*, 104 F.3d at 1319 (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990)).

In this case, the government denies the very existence of the contract plaintiffs seek to enforce. Although defendant contends that plaintiffs cannot prove any of the elements of a binding contract, the foundation of defendant's motion to dismiss is that plaintiffs cannot establish that the government representative who allegedly entered the agreement was authorized to bind the United States in contract. A finding of lack of authority would render the alleged contract unenforceable without the court's analysis of the remaining elements of a contract. *See Roy v. United States*, 38 Fed.Cl. 184, 187–88 (1997).

In *Federal Crop Insurance Corporation v. Merrill*, the Supreme Court of the United States established two controlling principles in government contract law. 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). First, the Court held that the government is not bound by the acts of its agents unless such agent is acting within the limits of his actual authority. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Second, the Court held that anyone entering into an arrangement with the government takes the risk of "having

accurately ascertained that he who purports to act for the government stays within the bounds of his authority". *Id.; see also Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432 (Fed.Cir.1998); *Trauma Serv. Group,* 104 F.3d at 1325; *City of El Centro,* 922 F.2d at 820. Therefore, the burden falls on plaintiffs to allege facts sufficient to show that Daniel Bensing or another government agent which plaintiffs had contact, had actual authority, either express or implied, to bind the United States in contract. *See Harbert/Lummus Agrifuels Projects,* 142 F.3d at 1432; *Trauma Serv. Group,* 104 F.3d at 1325; *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir. 1989).

■ A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms. *See Garza v. United States,* 34 Fed.Cl. 1, 17 (1995). In support of their claim, plaintiffs offer a number of statutes and regulations as the source of the government's authority to make this particular contract, however, none of the provisions cited to by plaintiffs support their argument that a government official with whom Mark McAfee dealt had actual authority to bind the United States.

Plaintiffs argue that Daniel Bensing, AUSA, with authorization from or ratification by Charles Stevens, USA, had authority to enter into the contract at issue by virtue of 28 U.S.C. §§ 516, 519 and 524, 28 C.F.R. § 0.168, directive 14–95 and FAR 6.302–2. Plaintiffs further allege that the actions taken by defendant were ratified by duly authorized individuals, however, plaintiffs do not identify any individuals or the source of their authority.

First, plaintiffs cite to the statutory authority giving the Attorney General of the United States the power to conduct and supervise all litigation on behalf of the United States, its agencies, and its officers as evidence of the AUSA's and/or the USA's authority to contract in this case. 28 U.S.C. §§ 516 and 519 (1994). Plaintiffs' reliance on this statutory authority is misplaced. The statutes, as summarized above, do nothing to suggest that an AUSA or USA would have the authority to contract in the manner alleged in this case. Rather, the statutes focus on the Attorney General's authority over all litigation, including litigation conducted by the USA's office. In fact, pursuant to statute, a USA is subject to the general direction and supervision of the Attorney General, 28 U.S.C. § 519, and an AUSA is appointed by the Attorney General to aid the USA in carrying out his duties as chief federal law enforcement official responsible for prosecuting all offenses against the United States within the district he serves. *See* 28 U.S.C. §§ 542 and 547 (1994). The statutes clearly are not sources of either the AUSA's or USA's authority to contract with plaintiffs, but the statutes make it clear that the AUSA and USA are not the highest authority of their office.

Next, plaintiffs point to a set of regulations developed by the Attorney General delegating settlement authority to various officials, including USA's, as evidence of the AUSA's authority to contract in this case. *See* 28 U.S.C. § 510 (1994). The authority of USA's to make compromises is codified in the Code of Federal Regulations and further explained in the Department of Justice, United States Attorney Manual. 28 C.F.R. § 0.168 (1999); *see also* directives 14–95 reprinted at 28 C.F.R. Ch. 1, Part O, Subpart Y (1999). The court, however, finds both the directive and the regulations inapplicable to this case because the cited authorities delegate authority to the USA to compromise claims, not contract for services of an intermediary in settlement negotiations as allegedly resulted in this case.[4]

The court also finds that even if plaintiffs had alleged that the purported contract was

---

4. At the time of formation of the alleged contract, plaintiffs' property was not yet subject to a claim by the United States or in foreclosure. In the event plaintiffs' property had been ripe for foreclosure, according to the directive, the case would be categorized as a routine foreclosure in which the gross amount of the original claim would not exceed the USA's authority to file suit or take any other action necessary to protect the interests of the United States. Directive 14–95, §§ 1(b)(2)(a), 4(a) and (b).

part of a settlement of Rodger McAfee's case, which plaintiffs did not, 28 C.F.R. § 0.168 and the directives dictate that an AUSA or USA obtain authorization from other government officials prior to taking any action in such a case. For example, (1) the USA would be required to obtain the approval of the Assistant Attorney General of the Civil Division of the DOJ when taking any action in *Rodger McAfee,* No. CV–F–96–5720–AWI–SMS, due to the dollar amount of the claim involved, directive 14–95, § 1(c); (2) any such settlement agreement would exceed the threshold amount within which the USA is generally authorized to settle, 28 C.F.R. § 0.168 and directive 14–95, §§ 1(b)(2)(a), 4(a) and (b); (3) even if authority existed for a USA to settle a claim in this manner, the AUSA would not have compromise authority unless the AUSA supervised other AUSA's who handled civil litigation and the USA specifically delegated authority to the AUSA in writing, directive 14–95, § 1(d); and (4) delegations of authority pursuant to 28 C.F.R. § 0.168 must be in writing and approved by the Deputy Attorney General or Associate Attorney General before taking effect. The court concludes that the USA would have been required to obtain further authorization to remove plaintiffs' lien as part of any settlement in *Rodger McAfee,* No. CV–F–96–5720–AWI–SMS.

Third, plaintiffs cite to 28 U.S.C. § 524 (1994 & Supp. III 1997) as a basis for the AUSA's authority to make the alleged contract at issue. This statutory provision does not provide contracting authority; rather, it establishes appropriations available to the DOJ. Of particular importance, however, is the requirement that payment of expenses or specific uses of appropriations must be authorized or approved by the Attorney General. *See* 28 U.S.C. § 524. The court concludes that even if this statute permits forgiveness of plaintiffs' FSA loans in exchange for plaintiffs' services, any such arrangement would be at the Attorney General's discretion, not the AUSA's or USA's. Plaintiffs have not identified or presented facts, that if proven, suggest that the AUSA or USA obtained authorization from any superior, let alone the Attorney General. Under the circumstances, the court finds that

28 U.S.C. § 524 does not provide the basis of the AUSA's or USA's authority to contract in this matter.

Finally, plaintiffs cite to FAR 6.302–2, a contracting regulation permitting agencies to solicit bids and proposals using other than full and open competition when an unusual and compelling urgency precludes full and open competition, as the source of the AUSA's or USA's contracting authority in this case. 48 C.F.R. Ch. 1, Part 6, Subpart 6.302–2 (1998). Plaintiffs argue that this authority extends to acquiring services of an expert for a current or anticipated litigation or dispute, e.g. a neutral person to facilitate the resolution of issues in an alternative dispute resolution process. Furthermore, plaintiffs argue that competitive bidding procedures would have been suspended because Rodger's Rebellion presented an unusual and compelling urgency that without Mark McAfee's assistance as a mediator could have resulted in serious injury or death.

The controlling statutes and regulations require the agency to evaluate its options and to make any determination to use other than full and open competition prior to entering into the contract. *See* 10 U.S.C. § 2304 (1994); FAR 6.302–2. In order for plaintiffs to rely on FAR 6.302–2, they must assert facts demonstrating the DOJ decision to use other than full and open competition prior to entering the contract. Defendant contends and the court agrees that FAR 6.302–2 is inapplicable because the government did not fully comply with that sections' provisions. When awarding contracts using other than competitive procedures, the contracting officer is required to provide written justifications for disregarding competitive procedures. *See* 10 U.S.C. § 2304(f)(1); FAR 6.303 and 6.304. Although, in limited circumstances, the contracting officer is allowed to delay the justification and approval for contracts based on an unusual and compelling urgency, the actual determination that an exception to full and open competition applies must be made prior to entering the contract. *See* 10 U.S.C. §§ 2304(c)(2) and (f)(2); FAR 6.301(b) and 6.302–2. Plaintiffs allege that FAR 6.302–2 evidences the AUSA's or USA's contracting authority, however, plaintiffs fail

to make any factual assertions supporting their contention that the government relied on this provision when entering the alleged contract.

None of the provisions cited to by plaintiffs suggest that the AUSA, or his supervisor, the USA, with whom Mark McAfee purportedly contracted, had authority to commit the United States in contract to forgive the FSA loans held on plaintiffs' property. Nor is any indication present that the USA obtained the approval from an official with adequate authority to contract with a third party to provide services as an intermediary in settlement negotiations. At most, plaintiffs have shown that the AUSA had authority to recommend an agreement or settlement to the USA, who in turn was required to request and obtain authorization from a superior with the requisite actual authority. Plaintiffs do allege that defendant was acting through officials who had express contracting authority, however, such allegations are conclusory because plaintiffs do not identify any individuals or the source of their authority. Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *See Marshall v. United States*, 21 Cl.Ct. 497, 499 (1990) (quoting *Briscoe v. LaHue*, 663 F.2d 713 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). The court concludes that plaintiffs have failed to allege facts suggesting that the named AUSA or USA had authority or obtained the authorization necessary in order to form an enforceable contract with plaintiffs. Plaintiffs, therefore, fail in establishing that anyone, with whom they dealt, possessed express authority to contract for relief of their loans.

■ However, actual authority can also be implied when such authority to bind the United States in contract is an "integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989); *see Salles v. United States*, 156 F.3d 1383 (1998);

*Roy v. United States*, 38 Fed.Cl. 184, 188 (1997). In this context, the courts have interpreted the word integral to mean "essential" or "necessary to form a whole." *See Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 61 (1996). Therefore, in order to withstand defendant's motion to dismiss, plaintiffs must assert facts showing that authority to contract for intermediaries is necessary or essential to the successful performance of the AUSA's duties.

■ In plaintiffs' response brief, plaintiffs argue that authority to settle lawsuits and claims and to avoid violent situations where lives may be lost or property destroyed is an integral part of the USA's duty. The court finds plaintiffs' arguments misdirected for two reasons. First, the purported contract is distinguishable from the settlement negotiations in *United States v. Rodger McAfee*, No. CV–F–96–5720–AWI–SMS. Second, avoiding violent situations where lives may be lost and property is not essential to the successful performance of a USA's duties. A USA is the chief federal law enforcement official responsible for prosecuting all offenses against the United States within the district he serves, and an AUSA is appointed by the Attorney General to aid the USA carry out his duties. 28 U.S.C. §§ 542 and 547. The USA's primary responsibilities include the (1) the prosecution of criminal cases brought by the federal government; (2) the prosecution and defense of civil cases in which the United States is a party; and (3) the collection of debts owed to the federal government which are administratively uncollectible. 28 U.S.C. § 547.

Although the court concedes that authority to settle claims is integral to the USA's duties, the court finds settlement authority irrelevant in this case.[5] The court acknowledges the importance of avoiding violent situations, but again, finds plaintiffs' argument irrelevant to the resolution of this case. This case is about the AUSA's and/or USA's au-

---

5. Moreover, the court finds that the USA's authority to compromise claims is limited and an AUSA is not generally authorized to compromise claims except in very limited situations which plaintiffs have not alleged exist in this case. Directive 14–95, §§ 1(b)(2)(a), 1(c), 1(d), 4(a) and (b). Furthermore, the court cannot imply that the AUSA or USA possessed actual contracting authority where the internal regulations expressly preclude them from exercising such authority. *See Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 62 (1996).

thority to obligate the United States in contract for services of an intermediary. Plaintiffs have failed to assert facts showing that authority to contract for intermediaries is necessary or essential to the successful performance of the AUSA's and/or USA's duties.

To establish a claim upon which relief can be granted, a plaintiff must allege the elements necessary to establish the existence of an express contract or an implied-in-fact contract. Plaintiffs cannot prove the existence of a contract when plaintiffs have not alleged facts showing authority for the contract was ever given. The fact that plaintiffs believed that Daniel Bensing had authority or obtained the USA's ratification is irrelevant; plaintiffs must assert facts that, if proven, show actual authority to contract in this matter. *See Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432 (Fed.Cir.1998). Until authorization is actually issued, any performance undertaken by Mark McAfee was at his own risk. This court concludes that plaintiffs' complaint is dismissed for failure to state a claim upon which relief can be granted because plaintiffs cannot prove, on these facts, an enforceable contract existed between plaintiffs and defendant. Accordingly, defendant's motion to dismiss is granted.

### CONCLUSION

For the reasons set forth above, the court hereby (1) denies defendant's motion to dismiss plaintiffs claim of breach of express, or in the alternative, implied, contract for lack of subject matter jurisdiction; (2) denies defendant's motion to dismiss the claims of Eric McAfee, Adam McAfee and Andrew McAfee; (3) grants defendant's motion to dismiss the portions of plaintiffs' complaint that seeks specific performance and declaratory and injunctive relief; and (4) grants defendant's motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. The Clerk of the Court shall enter judgment dismissing plaintiffs' complaint with prejudice.

**IT IS SO ORDERED.**