Christopher George **CHRISTOS**, Robert L. Bailey, James M. Pope, Lorin W. Ross, George A. Krist, Alan M. Schwartzman, Robert A. Stokes, Michael S. Cohen, and James O. Sloan, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 98–866C.

United States Court of Federal Claims.

Dec. 19, 2000 [1].

---

1.  Defendant's Motion To Publish Opinion was ALLOWED on January 17, 2001.

Richard Edwin Miley, North Augusta, South Carolina, attorney of record for plaintiffs.

Richard Alan Miller, Department of Justice, Washington, DC, with whom was Assis-

tant Attorney General David W. Ogden, for defendant. David M. Cohen, Director, and James M. Kinsella, Deputy Director.

## *OPINION*

FUTEY, Judge.

This contract case is before the court on defendant's motion to dismiss. Defendant maintains the court lacks jurisdiction over plaintiffs' claim and that plaintiffs have failed to state a claim upon which relief may be granted because there is no money-mandating statute or regulation that grants jurisdiction and plaintiffs are not in contractual privity with defendant. Plaintiffs assert that there is a money-mandating statute and regulation allowing jurisdiction and that they are third-party beneficiaries of the contracts between the Department of Energy (DOE) and Westinghouse Savannah River Company (WSRC). Plaintiffs also maintain there is an agency relationship between DOE and WSRC causing defendant to be vicariously liable for WSRC's alleged fraudulent acts. Finally, plaintiffs contend the Age Discrimination in Employment Act (ADEA) provides plaintiffs further relief.

### *Factual Background*

Plaintiffs Christopher G. Christos, Robert L. Bailey, James M. Pope, Lorin W. Ross, Alan M. Schwartzman, George A. Krist, Robert A. Stokes, Michael Cohen, and James O. Sloan (plaintiffs) are former non-temporary employees of WSRC, and they are acting individually and as representatives of all similarly situated former employees of WSRC who were laid off since January 1, 1996.[2] WSRC is a wholly owned subsidiary of West-

**2.** Plaintiffs request class certification in their Complaint.

**3.** Section 17.601 of the Federal Acquisition Regulations (FAR) defines a Management and Operating Contract as:
   an agreement under which the Government contracts for the operation, maintenance, or support, on its behalf, of a Government-owned or -controlled research, development, special production, or testing establishment wholly or principally devoted to one or more major programs of the contracting Federal agency.

inghouse Electric Corporation (WEC), which has changed its name to CBS, Inc.

Defendant United States, by and through DOE, owns the Savannah River Site (SRS), a defense nuclear facility located in western South Carolina. WSRC managed and operated the SRS for DOE pursuant to a Management and Operating Contract (M & O Contract)[3] from April 1989 until October 1, 1996,[4] when Bechtel Savannah River, Inc. (BSRI), B & W Savannah River Company (B & W), and BNFL Savannah River Company (BNFL) joined WSRC to become the new "performing entity" under a new M & O Contract.[5] Both of these contracts are cost reimbursement contracts with award fee and incentive fee provisions, awarded pursuant to Part 17.6 of the Federal Acquisition Regulations (FAR).

Included in these cost reimbursement contracts is a Personnel Appendix setting forth allowable personnel administration costs. In particular, Section H.60 states as follows:

> This advance understanding sets forth policies and associated expenses related to Contractor employee practices, relocation expenses, and other costs which have been agreed to by the parties as being reasonable and reimbursable when incurred in the performance of the contract work. Only those items of costs that are set forth herein or specifically referenced in this advanced understanding are allowable by reason of advance understanding under this Contract.[6]

Section H.60 then lists various types of allowable costs, including severance pay. Plaintiffs refer to this part of the Contracts as the "shall receive severance pay" provisions. The applicable provision in the 1989 Contract provides:

48 C.F.R. § 17.601 (2000).

**4.** This was Contract No. DE–AC09–89SR18035 (hereinafter "1989 Contract"). The parties in their briefs sometimes refer to the 1989 Contract as the 1988 Contract.

**5.** Contract No. DE–AC09–96SR18500 (hereinafter "1996 Contract").

**6.** Plaintiffs' Documentary Appendix (Pls.' App.) at 18.

1. Except as provided in paragraph 2,[7] an employee (except construction craft rate employees) whose services are no longer required under this contract due to reduction in workforce, shall receive a severance pay allowance of one week's base salary for each full year of service up to a maximum of 26 weeks. For former SRP or former Contractor employees who received severance pay funded by the federal government, "service" shall mean and be limited to continuous service performed by an employee at the Savannah River Plant.[8]

The 1989 Contract contains a disclaimer, however, emphasizing:

The Personnel Appendix is adopted for the exclusive benefit and convenience of the parties hereto, and nothing contained herein shall be construed as conferring any right or benefit upon past, present, or future employees of the Contractor, or upon any other third party.[9]

The 1996 Contract does not include the disclaimer but clarifies the severance pay right. The applicable provision states:

1. All non-temporary employees of WSRC, BSRI, B & W and BNFL employees (except construction craft rate employees) whose services are no longer required under this contract due to reduction in workforce, shall receive severance pay based upon total service credit earned with the corporation, up to a maximum of 26 weeks.[10]

Severance pay is also addressed more generally in certain DOE Workforce Restructuring Plans (Plans). These Plans were issued pursuant to Section 3161 of the National Defense Authorization Act for Fiscal Year 1993 (NDAA), which is codified at 42 U.S.C. § 7274h (1994).[11] The Plans were issued in 1993 (1993 Plans) and they provide:

Severance pay will be paid to terminated employees as follows: Full-service Westinghouse employees and Bechtel nonmanual employees will receive severance pay equal to one week's pay for each year of service up to a maximum of 26 weeks' pay.[12]

The Plans were republished in 1995 (1995 Plans), but they still contained a severance pay provision affirming:

Eligible involuntarily separated WSRC, BSRI and WSI full-service employees will receive severance pay equal to one week of pay for each full year of service up to a maximum of 26 weeks['] pay.[13]

The 1995 Plans also contained a disclaimer, however, that specifies "it is not the intent of DOE in implementing this workforce restructuring plan to create any private right of action or to modify obligations imposed upon employers or employee representatives by law or by contract."[14]

On December 18, 1996, by letter, WSRC notified most of the named plaintiffs and class members of their having been designated for layoff as a result of the reduction in workforce at SRS executed pursuant to the Plans. When notified that they were being laid off, plaintiffs elected to retire pursuant to a Special Retirement Option offered by WEC (WEC SRO Pension). All plaintiffs except George Krist signed a waiver of entitlement to severance pay to which they might

---

7. Paragraph 2 elaborates:

No employee (1) who accepts transfer to another facility, subsidiary, or affiliate of the Contractor, (2) who is offered employment at comparable pay and benefits by a successor contractor, (3) who resigns, (4) who is discharged for cause, or (5) who retires normally or under the early retirement provisions of a pension or retirement plan of the Contractor, will be eligible for severance pay.

Defendant's Motion to Dismiss (Def.'s Mot.), Appendix (App.) at 2.

8. *Id.*

9. Def.'s Mot., App. at 1.

10. Def.'s Mot., App. at 4.

11. NDAA specifies:

Upon determination that a change in the workforce at a defense nuclear facility is necessary, the Secretary of Energy ... shall develop a plan for restructuring the workforce for the defense nuclear facility ....

42 U.S.C. § 7274h(a).

12. Pls.' App. at 47.

13. Pls.' App. at 60.

14. Pls.' App. at 55.

otherwise have been entitled, in return for receiving the WEC SRO Pension.[15]

When plaintiffs were laid off, WSRC requested reimbursement from DOE for severance pay as an allowable cost pursuant to the Contracts. DOE paid WSRC the sum of $702,464.00 for this purpose. WSRC transferred these funds directly to WEC, however, and not to the WEC SRO Pension. Plaintiffs assert this transfer was part of an alleged WSRC scheme to divert severance pay from them. WSRC never disbursed any severance pay to plaintiffs.

Plaintiffs filed their Complaint on November 13, 1998, asserting they were entitled to receive severance pay from defendant because: (1) they were intended beneficiaries of the M & O Contracts, and (2) defendant knowingly permitted WSRC to receive severance money from DOE but failed to require that WSRC pay severance pay to plaintiffs. Plaintiffs also contend in their second cause of action that, under agency principles and vicarious liability, defendant is liable for failing to stop WSRC's alleged scheme to divert severance pay from plaintiffs. Plaintiffs seek unpaid severance pay, attorney's fees, prejudgment interests and punitive damages.[16]

On January 12, 1999, defendant filed its Motion To Dismiss asserting that the court lacks subject matter jurisdiction and that plaintiffs have failed to state a claim upon which relief may be granted because: (1) plaintiffs have no privity of contract with DOE; (2) no exception to the privity requirement applies; and (3) federal law controls this action so plaintiffs' cannot assert the South Carolina cause of action of breach of contract accompanied by fraudulent acts. Pursuant to the parties' request, the court issued an order dated August 5, 1999, staying the proceedings of this case pending a decision in *Stokes v. Westinghouse Savannah River Company*, 206 F.3d 420 (4th Cir.2000). The court lifted the stay on July 25, 2000, after the Fourth Circuit Court of Appeals rendered a decision in *Stokes*, and the parties

submitted a Joint Status Report on August 25, 2000, seeking resolution of defendant's Motion To Dismiss.

*Discussion*

Defendant's motion to dismiss is based on RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(4) for failure to state a claim upon which relief may be granted. The distinction between the two is well established. *See Gould, Inc. v. United States*, 67 F.3d 925 (Fed.Cir.1995); *Spruill v. Merit Systems Protection Board*, 978 F.2d 679 (Fed.Cir.1992); *Do–Well Machine Shop, Inc. v. United States*, 870 F.2d 637 (Fed.Cir. 1989). "A dismissal for lack of subject matter jurisdiction essentially means that the subject-matter of the dispute is one that the court is not empowered to hear and decide." *McAfee v. United States*, 46 Fed.Cl. 428, 431 (2000) (citing *Gould, Inc.,* 67 F.3d at 929). "In contrast, a dismissal for failure to state a claim is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." *Id.* In order to determine whether the allegations state a cause of action upon which relief may be granted and to decide issues of fact arising in the controversy, the court must assume jurisdiction over a claim. *Id.* (citing *Do–Well Machine Shop, Inc.,* 870 F.2d at 639). It seems practical, therefore, to first analyze a case under RCFC 12(b)(1) to determine if there is jurisdiction. If jurisdiction exists, plaintiffs' claims can then be examined under RCFC 12(b)(4).

In ruling on an RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court must accept as true the complaint's undisputed factual allegations and construe them in a light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989); *Farmers Grain Co. v. United States*, 29 Fed.Cl. 684, 686 (1993). If the

---

**15.** Plaintiffs allege WSRC "tricked" them into signing these documents.

**16.** Plaintiffs' demand for punitive damages is based on their belief that South Carolina law applies to the SRS, a federal enclave, and that

they can assert the South Carolina cause of action for breach of contract accompanied by fraudulent acts, which is compensable by punitive damages.

undisputed facts reveal any possible basis on which the non-moving party may prevail, the court must deny the motion. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir. 1991). "The court should 'look beyond the pleadings and decide for itself those facts, even if in dispute, which are necessary for a determination of [the] jurisdictional merits.'" *Farmers Grain,* 29 Fed.Cl. at 686 (citing *Raymark Industries, Inc. v. United States,* 15 Cl.Ct. 334, 335 (1988)). Plaintiffs bear the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Rocovich,* 933 F.2d at 993.

■ Pursuant to the Tucker Act this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Such a substantive right must be "grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department." *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). The provisions relied upon in a claim based on statute or regulation must contain language which could fairly be interpreted as mandating recovery of compensation from the government. *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd* 904 F.2d 45 (Fed. Cir.1990) (citations omitted).

Plaintiffs maintain this court has jurisdiction based on Section 3161 of the NDAA, DOE's Plans issued pursuant to this section, and on a theory of contractual privity. With respect to DOE's Plans, plaintiffs maintain that in Section 3161 of the NDAA Congress issued a mandate to DOE, an executive agency, to develop, implement, and fund the Plans. Plaintiffs believe, therefore, that the Plans constitute "any regulation of an executive department" within the meaning of the Tucker Act. Plaintiffs contend the severance pay provisions of the Plans are money-mandating provisions under which plaintiffs can seek relief.

■ In order to invoke jurisdiction under the Tucker Act based on a money-mandating regulation, plaintiffs must show that (1) the Plans are an enforceable regulation of an executive department, and (2) the provisions of the Plans "can be fairly interpreted to create a substantive right to monetary compensation from the United States." *Hamlet v. United States,* 63 F.3d 1097, 1102 (Fed.Cir. 1995). Plaintiffs can not prove either of the prongs of this two-part test.

■ To prove the first prong that the Plans are a regulation of an executive department, plaintiffs must establish all of the following criteria:

(1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute.

*Id.* at 1105.

■ DOE was specifically directed by Congress to develop the Plans, and DOE appears to have conformed to all procedural requirements. Thus, the first and second criteria are satisfied. Also, the Plans do not appear to contravene any statutes so plaintiffs can prove the fourth criteria as well. They can not, however, meet the third criteria that DOE intended to be bound to pay severance pay directly to plaintiffs. When determining whether a provision was intended to be binding, the court should consider: (a) whether the language of the provision is

mandatory or advisory; (b) whether the provision is substantive or interpretive; (c) the context which the provision was promulgated; and (d) any other extrinsic evidence of intent. *Id.*

■ The 1995 Plan specifically disclaims any private right of action. In particular, the Plan says "it is not the intent of DOE in implementing this workforce restructuring plan to create any private right of action or to modify obligations imposed upon employers or employee representatives by law or by contract."[17] Such a clear statement of intent makes it unnecessary to review whether the provision is mandatory or advisory and substantive or interpretive, as well as the context in which the provision was promulgated. DOE did not intend to be bound to pay severance pay to plaintiffs. Plaintiffs are unable to satisfy the third criteria, and therefore, can not establish the first prong of the two-part test for determining whether a regulation is money-mandating.

Plaintiffs also can not prove the second prong of the analysis asking whether the provisions of the Plans can be fairly interpreted to create a substantive right to monetary compensation from the United States. Besides the disclaimer provision discussed in the previous paragraph, which prohibits such a right, nowhere in the Plans is there any indication that there will be monetary compensation from the United States paid directly to WSRC employees as a result of any of the actions alleged in the Complaint. Accordingly, plaintiff can not satisfy either prong of the two-part test to prove that the Plans were a money-mandating regulation, and therefore, can not assert jurisdiction based on these Plans.

■ Plaintiffs also allege jurisdiction solely on Section 3161 of the NDAA, claiming it is a Congressional act that created a private right of action. The role of the courts when determining whether a Congressional act mandates compensation is "limited solely to determining whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

If this Congressional intent can not "be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

■ The plain language of Section 3161 does not refer to severance pay and only sets forth guidelines for the Secretary of Energy to consider when developing a workforce restructuring plan. Although these guidelines emphasize assisting terminated employees in finding further employment or by encouraging early retirement or similar programs, the statute does not explicitly say that these terminated employees are entitled to a private right of action if they do not receive such assistance or benefits.

Without specific language in Section 3161 mandating a private right of action, plaintiff must depend on an implicit right. The Supreme Court has stated that "there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting legislation 'with an unmistakable focus on the benefitted class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." *Universities Research Association v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (citations omitted). Section 3161 is a general command to DOE setting forth guidelines for restructuring. It does not support the inference that issues raised during implementation of such plans can be heard in a private right of action. Plaintiffs, therefore, can not rely upon Section 3161 as being a Congressional act that supports jurisdiction in this court.

■ Finally, plaintiffs argue the court has jurisdiction based on contractual privity. This assertion also fails, however, because plaintiffs were not parties to the M & O Contracts—they were merely employees of WSRC. This court has held that employees of corporations contracting with the government "have no contractual relationship with the Government and therefore cannot main-

[17]. Pls.' App. at 55.

tain a suit against the United States." *Robo Wash, Inc. v. United States,* 223 Ct.Cl. 693, 695, 1980 WL 13154 (1980) (quoting *Bolin v. United States,* 221 Ct.Cl. 947, 1979 WL 30821 (1979)). Plaintiffs, therefore, must establish that an exception to the privity requirement applies in order for there to be jurisdiction in this case.

Plaintiffs maintain they can enforce the severance pay provisions of the M & O Contracts because they are third-party beneficiaries of these contracts. Third-party beneficiary status is an exception to the privity requirement that applies in situations where the contract reflects the express or implied intention of the parties to benefit the third-party. *State of Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir. 1997). This analysis is commonly referred to as the "intention-to-benefit test." *Schuerman v. United States,* 30 Fed.Cl. 420, 433 (1994). "Any such intent is found through an examination of the parties' entire contractual relationship ... and is ascertained by determining whether the beneficiary would be reasonable in relying on the promise as intending to confer a right on him." *Sallee v. United States,* 41 Fed.Cl. 509, 514 (1998) (citing *Schuerman,* 30 Fed.Cl. at 433 and *Montana,* 124 F.3d at 1273). The intended beneficiary "need not be specifically or individually identified in the contract, but must fall within a class that the contract clearly intends to benefit." *Id.* It is important, however, for the court to carefully "distinguish between incidental and indirect beneficiaries and direct beneficiaries, only the latter of which qualifies for third-party beneficiary status." *Schuerman,* 30 Fed.Cl. at 433.

After reviewing the M & O Contracts the court concludes it is unreasonable for plaintiffs to rely on the contracts as granting them a right to severance pay because they are merely incidental beneficiaries of the "shall receive severance pay" provisions. This court is in agreement with the

decision recently rendered in *Stokes v. Westinghouse Savannah River Co.,* 206 F.3d 420 (4th Cir.2000), a case involving the same plaintiffs as the present case. *Stokes* was filed in the United States District Court for the District of South Carolina in 1997, and plaintiffs sued based on the same M & O Contracts at issue here. Plaintiffs argued, as they do before this court, that they are intended beneficiaries of the M & O Contracts and that WSRC wrongfully withheld severance pay from them.[18] Plaintiffs also raised the ADEA claims they have set forth here.[19] The District Court dismissed plaintiffs' complaint, in an unpublished decision, and plaintiffs appealed to the Fourth Circuit Court of Appeals. *Id.* at 425. Although the issues raised on appeal only addressed plaintiffs' ADEA claims, the court commented on whether plaintiffs could enforce the severance pay provisions of the M & O Contracts. The court concluded:

> In short, the provision in the contract between Westinghouse Savannah[20] and the DOE referring to severance pay simply represented an agreement that severance payments made by Westinghouse Savannah would be costs that are reimbursable by the DOE. There is no indication in the contract that this provision was intended to create a direct benefit to laid-off employees of Westinghouse Savannah.

*Id.* at 428–29. The court determined that plaintiffs were "merely incidental beneficiaries of [the severance pay] provision" and stated "the contract evinces neither an expressed nor an implied intent on the part of Westinghouse Savannah or the DOE to directly benefit employees at the Savannah River site." *Id.*

This court chooses to adopt the analysis set forth in *Stokes.* Plaintiffs, therefore, cannot assert third-party beneficiary status as an exception to the privity requirement because they are merely incidental beneficiaries

---

**18.** Defendant's Notice of Related Cases, Exhibit 1 at 3.

**19.** *Id.*

**20.** The court in *Stokes* uses the abbreviation "Westinghouse Savannah" for the Westinghouse Savannah River Company instead of "WSRC" as this court does.

of the "shall receive severance pay" provision.[21]

Another exception to the privity requirement is an agency relationship. Plaintiffs maintain in their first cause of action that an agency relationship exists between DOE and WSRC and that DOE, as principal, has a duty to require WSRC, as agent, to pay severance pay to plaintiffs as required in the M & O Contracts. Plaintiffs emphasize that DOE did provide money to WSRC to cover the costs of plaintiffs' severance pay. They contend, however, that defendant has refused to require WSRC to transfer this money to plaintiffs. In their second cause of action plaintiffs argue that, based on an agency relationship, defendant is vicariously liable for WSRC's alleged scheme to divert this severance pay money from plaintiffs.

■ Contrary to what plaintiffs assert, there is no agency relationship in this case. To establish such a relationship, plaintiffs must show that WSRC was:

(1) acting as a purchasing agent for the government; (2) the agency relationship between the government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the government would be directly liable . . . .

*National Leased Housing Assoc. v. United States*, 105 F.3d 1423, 1436 (Fed.Cir.1997) (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed.Cir.1983)).

■ DOE specifically stated in the 1989 Contract's disclaimer provision that it is not directly liable to third parties like plaintiffs. Although this disclaimer was not included in the 1996 Contract, this does not mean it lost its effect. This court has held that the silence of a subsequent modifying agreement can not be construed as revoking the explicit disclaimers set forth in an earlier contract. *Slattery v. United States*, 35 Fed.Cl. 180, 185 (1996). Instead, plaintiffs would have to show language in the subsequent agreement which affirmatively revokes the disclaimers set forth in the prior agreement. *Id.* No such revocatory language exists in the 1996 Contract. Since the disclaimer clearly states defendant is not directly liable to third parties, plaintiffs cannot establish the third prong of the agency test.

Also, the contracts at issue contain no "reasonably clear indications" that the government intended to create a relationship or that it permits the type of suit plaintiffs have filed. Plaintiffs, therefore, can not establish the second prong of the agency test either. The test for agency is not disjunctive so it is unnecessary to analyze the first prong. Plaintiffs have failed to prove that an agency relationship exists between DOE and WSRC.[22]

■ Furthermore, the fact an M & O Contract is at issue here does not change the outcome of this case. M & O Contracts are discussed in detail in FAR Chapter 1, Subchapter C, Part 17. Section 17.604 implies that employees of a party to an M & O Contract share a closer relationship to the government than employees of a party to a non-M & O Contract. This could lead to the conclusion that this special relationship gives rise to a duty on behalf of defendant to ensure that plaintiffs receive severance pay.

---

21. In conjunction with their third-party beneficiary argument, plaintiffs claim the ADEA must be incorporated into the Contracts because it was existing law at the time of the creation of the 1996 Contract. In the 1996 Contract, DOE and WSRC agreed that "[t]he Contractor shall comply with requirements promulgated by Federal, State, and local laws, statutes and regulations . . . ." Even if plaintiffs were able to establish third-party beneficiary status, however, this court lacks jurisdiction to consider claims based on the ADEA. *McCauley v. United States*, 38 Fed.Cl. 250, 265–67 (1997) (jurisdiction over ADEA claims resides only in the district courts), *aff'd* 152 F.3d 948 (Fed.Cir.1998) (Table).

22. Even if plaintiffs were able to establish an agency relationship, their claim based on South Carolina law for breach of contract accompanied by fraudulent acts is tenuous at best. The court, however, finds it unnecessary to address whether federal or South Carolina law applies, which would determine if plaintiffs could assert this state law claim, because plaintiffs' Complaint can be dismissed for lack of subject matter jurisdiction. Also, plaintiffs' request for punitive damages would clearly have to be denied because this court lacks jurisdiction to grant punitive damages. *See Garner v. United States*, 230 Ct.Cl. 941, 943, 1982 WL 25283 (1982); *Vincin v. United States*, 199 Ct.Cl. 762, 468 F.2d 930 (1972).

It is clear from the text of Section 17.604, however, that the special relationship between the government and employees of a party to an M & O Contract is limited. Specifically, Section 17.604 states:

> Because of the nature of the work, or because it is to be performed in Government facilities, the Government must maintain a special, close relationship with the contractor and the contractor's personnel in various important areas (e.g., safety, security, cost control, site conditions).

48 CFR § 17.604 (2000). This provision does not state and does not indicate that there should be a special relationship between employees and the government in the area of personnel matters and specifically severance pay. No court has interpreted M & O Contracts in this context. Because personnel matters are something better handled by the contractor, who has daily contact with its employees and has closer supervision over them, this court concludes the government does not share a special relationship with employees of a party to an M & O Contract in the area of personnel matters. Defendant's only obligation, therefore, with respect to severance pay was to reimburse WSRC for severance pay that arose as a result of the M & O Contracts. As plaintiffs acknowledge, defendant did pay WSRC $702,464.00 for the severance pay related to plaintiffs' dismissal. By providing this money, DOE fulfilled its obligations under the M & O Contracts.

Since plaintiffs are unable to establish that a money-mandating statute or regulation applies to this case or that there is contractual privity or an exception to the privity requirement that governs, this court lacks subject matter jurisdiction under the Tucker Act to hear plaintiffs' claim.[23] It is unnecessary, therefore, to analyze plaintiffs' case under RCFC 12(b)(4) for failure to state a claim.

**23.** Plaintiffs also are precluded from bringing their case under the Contract Disputes Act (CDA), as they allege in their Complaint, because they have failed to establish privity. The requirement of privity of contract must be shown for all parties attempting to maintain a suit against the government under the CDA. *See Erickson Air*

*Conclusion*

For the above-mentioned reasons, defendant's Motion To Dismiss is hereby GRANTED. Accordingly, the Clerk is directed to dismiss plaintiffs' Complaint.[24] No Costs.

IT IS SO ORDERED.

*Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984).

**24.** This decision moots plaintiffs' request for class certification.