**HARBERT/LUMMUS AGRIFUELS PRO-JECTS, Harbert International, Inc., Abb Lummus Crest, Inc. and Lummus Crest, Inc., Plaintiffs–Cross Appellants,**

v.

**The UNITED STATES, Defendant–Appellant.**

Nos. 97–5047, 97–5052.

United States Court of Appeals, Federal Circuit.

April 21, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined July 27, 1998.

**1430**

Edward Smith Allen, Balch & Bingham LLP, of Birmingham, AL, argued for plaintiffs–cross appellants.

Mark A. Melnick, Sr. Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant–appellant. With him on brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director of counsel on brief was I. Avrum Fingeret, Attorney, U.S. Dept. of Energy, of Washington, DC.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

## DECISION

GAJARSA, Circuit Judge.

The United States seeks review of the decision of the United States Court of Federal Claims in *Harbert/Lummus v. United States*, 36 Fed. Cl. 494 (1996), holding that the United States entered into an oral, unilateral contract with Harbert/Lummus [1] to continue guaranteeing future borrowing requests until completion of a construction project and awarding Harbert/Lummus damages for breach of this contract. Harbert/Lummus cross-appeals, seeking review of the trial court's method of calculating these damages and refusal to recognize the existence of a second contract to accelerate the construction and payment schedule. Because the contracting officer lacked the authority to enter into the oral, unilateral contract and did not ratify the contract, we reverse the decision of the trial court regarding the existence of a binding contract in which the Department of Energy ("DOE") promised not to suspend its guarantee and vacate the trial court's damages award. However, we affirm the trial court's finding that DOE was not contractually bound to an accelerated construction schedule.

## BACKGROUND

The facts of this case have been set out in great detail in the trial court's decision and will be referred to in this opinion only to the extent necessary for an understanding of the issues that give rise to this appeal. During the oil crisis in the late 1970's, the federal government investigated alternative sources of energy. Congress passed the Biomass Energy and Alcohol Fuels Act of 1980 (the "Act"), which created the Alcohol Fuels Program (the "Program") to encourage private companies to design and build alternative fuel energy plants. The Act created the Office of Alcohol Fuels (the "Program Of-

---

1. Harbert/Lummus, a joint venture of Harbert International, Inc. and Lummus Crest, Inc., will be treated as a single party for purposes of this case. Throughout the opinion, this party will be referred to as Harbert/Lummus.

fice") within DOE to administer the Program. Specifically, the Program Office was vested with the power to issue government loan guarantees for up to 90 percent of the cost of construction of ethanol and other alternative fuel plants. The Program Office had no independent contracting authority.

One of these loan guarantees was issued to Agrifuels Refining Corporation ("Agrifuels"), which in turn contracted with Harbert/Lummus to construct an ethanol plant. The funds that Agrifuels needed to construct the plant were provided by lending banks and guaranteed by DOE through a loan guarantee agreement and a loan servicing agreement. Harbert/Lummus was not a party to these contracts and was in contractual privity only with Agrifuels through the construction contract. This construction contract provided for a bonus for Harbert/Lummus for early completion and a penalty for late completion.

The construction payment schedule, which was attached to both the construction contract and the loan servicing agreement, called for a 21-month work and payment schedule. During the pre-closing negotiations and after construction began, Harbert/Lummus repeatedly requested that all the parties approve an accelerated 18-month work and payment schedule. Several DOE officials within the Program Office approved of the schedule modification, but later this approval, which was only circulated internally in the Program Office, was withdrawn. The trial court found that the DOE's Contracting Officer (the "CO") never expressed to Harbert/Lummus an intent to enter into a contract to modify this written schedule. *See Harbert/Lummus v. United States*, 36 Fed. Cl. 494, 512–13 (1996). The trial court held that no contract to accelerate the construction schedule was formed between Harbert/Lummus or Agrifuels and the government. *Id.*

During construction of the plant, Harbert/Lummus stated at a meeting at which all the parties were present that it was not receiving timely payments and that it wanted the accelerated construction schedule to be adopted by the parties. The Deputy Director of the Program Office responded that "DOE was committed to funding the project

to completion, and if the contractor completes the project, all the payments would work out in the end." *Id.* at 506. The Deputy Director did not have authority to bind the government. The trial court found that the CO was present at the same meeting, but did not question the offer and was silent after the offer was made. *Id.* The trial court found that the CO adopted the Deputy Director's statement by his silence and created a new, binding unilateral offer to Harbert/Lummus that the government would continue its role as guarantor of future borrowing requests by Agrifuels in exchange for Harbert/Lummus' continued work on the project. *Id.* at 513. When Harbert/Lummus continued work on the project, the trial court held that Harbert/Lummus had accepted DOE's offer, thereby creating a binding contract. *Id.* at 513–14.

Prior to completion of the plant, the ultimate parent companies of Agrifuels declared bankruptcy, triggering an event of default under the loan agreements between Agrifuels and DOE. DOE eventually decided to stop funding the project and Harbert/Lummus sued for damages for breach of DOE's promise to not withdraw its guarantee until completion of the project. The trial court awarded Harbert/Lummus $2,870,768 in damages for breach of this unilateral contract.

This appeal concerns the alleged formation of two oral contracts. The first contract regards the unilateral offer by the Deputy Director to continue guaranteeing Agrifuels' borrowing requests until completion of the project. The second contract regards the alleged acceptance by DOE of an accelerated construction and payment schedule. With regard to the unilateral contract to continue to guarantee funding, the government argues that the trial court erred in recognizing this contract as binding because (1) the Act and its implementing regulations do not authorize DOE to contract directly with construction contractors, (2) DOE could not enter into this oral contract because of restrictions imposed by statute and regulations, (3) the CO was not delegated the authority to enter into such a contract, and (4) the CO did not ratify the contract. In its cross-appeal, Harbert/Lum-

mus argues that the trial court erred in calculating the damages with respect to DOE's breach of this oral agreement. We need only determine whether the CO had the authority to enter into the oral, unilateral contract and whether he ratified such contract. Harbert/Lummus also argues that the trial court erred in finding that DOE was not bound by a second agreement to accelerate the construction schedule.

## DISCUSSION

In reviewing judgments of the Court of Federal Claims, we review conclusions of law *de novo* and findings of fact for clear error. *See City of El Centro v. United States,* 922 F.2d 816, 819 (Fed.Cir.1990). Because neither party challenges the trial court's findings of fact, we review the trial court's decision with regard to contract formation *de novo*. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir. 1997) ("In the absence of factual disputes, the question of contract formation is a question of law, reviewable de novo.").

### A. The Alleged Contract to Continue Guaranteeing Funding of the Project

It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Trauma Serv. Group,* 104 F.3d at 1325. Contractors dealing with the United States must inform themselves of a representative's authority and the limits of that authority. *See Federal Crop Ins.,* 332 U.S. at 384, 68 S.Ct. at 3. Moreover, "anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Trauma Serv. Group,* 104 F.3d at 1325. The burden was on Harbert/Lummus to prove that the CO had the authority to enter into the oral, unilateral contract. *See id.* The fact that Harbert/Lummus may have be-

lieved that the CO had authority is irrelevant; Harbert/Lummus must prove that the CO had actual authority. *Id.* For the reasons set forth below, we hold that the CO did not have authority to enter into an oral contract to continue to guarantee funding of the project until its completion.

The CO's authority to commit and bind DOE contractually was specifically conditioned in his delegation of authority as follows:

[The CO] is hereby delegated the authority, with respect to actions valued at $50 million or less, to approve, execute, enter into, modify, administer, closeout, terminate and take any other *necessary and appropriate action* (collectively, "Actions") with respect to Financial Incentive awards on behalf of the Department of Energy without the prior written approval of or further delegation being necessary from the Director, Office of Procurement Operations (or designee). *However, a separate prior written approval of any such action must be given by or concurred in by [the CO] to accompany the action.* At that dollar threshold, a specific delegation from the Director, Office of Procurement Operations (or designee) is not required. This delegation shall include the authority to make all required determinations and decisions, except those that are specifically to be made by other authority.

(emphasis added) Thus, the CO's delegation of contracting authority contained a separate and independent provision which required that all actions entered into by him be accompanied by his prior, written approval. Harbert/Lummus directs us to nothing in the record that evidences any separate, prior written approval by the CO of the oral, unilateral contract. Accordingly, the CO was not authorized to bind the government in disregard of this explicit provision. Harbert/Lummus argues that the CO had implied authority to enter into the unilateral contract and that such a contract was "necessary and appropriate" with regard to his actions relating to the Financial Incentive awards. These arguments are unpersuasive in light of the express mandate in the delegation that the CO agree to *any* action by

prior, written approval. Harbert/Lummus also argues that, because the government does not dispute the CO's authority to enter into a written contract with Harbert/Lummus to care for the plant after DOE ceased its guarantees, the CO must have had the authority to enter into the oral, unilateral contract because both contracts stemmed from the CO's authority to minimize DOE's expenses with regard to the project. Again, this argument is unpersuasive because it does not address the fact that the unilateral contract was oral and did not contain the required written approval.

As we have held before, agency procedures must be followed before a binding contract can be formed. *See American Gen. Leasing, Inc. v. United States*, 218 Ct.Cl. 367, 587 F.2d 54, 57–58 (1978) (holding that express oral agreement with government agent was not binding because, among other factors, applicable regulations required contract to be in writing); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed.Cir. 1989) ("Oral assurances do not produce a contract implied-in-fact until all the steps have been taken that the agency procedure requires; until then, there is no intent to be bound. Thus, it is irrelevant if the oral assurances emanate from the very official who will have authority at the proper time, to sign the contract or grant."). It appears evident that, if Harbert/Lummus had examined the CO's delegation of authority, it could not have reasonably believed it had entered into a binding contract with the government in the absence of the required written approval by the CO. Because there is no evidence of such prior, written approval by the CO of the unilateral contract, we hold that the CO lacked the authority to enter into the oral contract and it is therefore not binding upon the government. *See EWG Assocs., Ltd. v. United States*, 231 Ct.Cl. 1028, 1030 (1982) (explaining that the government is not estopped from denying the existence of a contract where the acts upon which the contractor relies are unauthorized); *see also OPM v. Richmond*, 496 U.S. 414, 420–33, 110 S.Ct. 2465, 2469–76, 110 L.Ed.2d 387 (1990) (explaining that the government is not estopped by the unauthorized acts of its agents).

Even if the CO somehow possessed the authority to enter into the oral contract, we hold that he did not ratify it. The trial court found that the Deputy Director, who did not have any contracting authority, actually made the offer to enter into the unilateral contract. Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts. *See United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 375, 45 L.Ed. 563 (1901). The Supreme Court has stated that:

> Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken. This is as true in the case of the government as in that of an individual. Knowledge is necessary in any event.... If there be want of it, though such want arises from the neglect of the principal, no ratification can be based on any act of his. Knowledge of the facts is the essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them.

*Id.* at 354, 21 S.Ct. at 375.

In our case, the trial court merely found that the CO was present when the Deputy Director made the offer and was silent after the offer was made. There was no finding that the CO even heard the statement. This is not sufficient evidence to support a finding of actual knowledge by the CO of the offer. In addition, the facts as found by the trial court do not support imputing to the CO constructive knowledge of the unilateral contract. The mere fact that Harbert/Lummus continued performing its construction activities would not have put the CO on notice of the existence of a new, unilateral contract because Harbert/Lummus had been performing its construction activities before the offer by the Deputy Director in accordance with its construction contract with Agrifuels. In the absence of either

actual or constructive knowledge of the unilateral contract, the CO's silence cannot be a ratification of the unilateral contract. Moreover, ratification must also be based on a demonstrated acceptance of the contract. *See EWG Assocs., Ltd.*, 231 Ct.Cl. at 1030. Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the CO. *See id.* The silence in this case by the CO was not an assent or acceptance of the oral, unilateral contract.

In addition, as previously discussed, the CO's delegation of authority expressly provided that even a ratification by the CO would have to be in writing. In the absence of such a writing, the CO could not have properly demonstrated his acceptance of the contract. Because we find that the government is not bound by this oral contract to guarantee funding of the project to completion, we reverse the decision of the trial court that there was such a contract and we vacate the trial court's damages award with respect to this alleged contract. We therefore need not reach Harbert/Lummus' argument that such damages were improperly calculated.

### B. The Alleged Contract to Accelerate the Construction Schedule

 In its cross-appeal, Harbert/Lummus argues that the trial court erred in not recognizing that DOE was contractually bound to an accelerated construction and payment schedule. Harbert/Lummus argues that, although the CO never communicated to Harbert/Lummus or Agrifuels an intent to bind DOE to the accelerated schedule, the nonpublicized, internally-circulated approval by several officials within the Program Office, which office did not have authority to bind DOE, was independently effective to bind DOE. Harbert/Lummus also argues that the CO's failure to execute the 18–month schedule change order after the internally-circulated approval was merely a ministerial act and that the non-occurrence of such an act is insufficient to allow the government to escape contractual liability.

 The party alleging the existence of a contract has the burden of demonstrating "a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma*

*Serv. Group*, 104 F.3d at 1325. Harbert/Lummus directs us to no authority for the proposition that DOE can be bound by a contract with Harbert/Lummus or Agrifuels when the CO never communicated to Harbert/Lummus or Agrifuels DOE's intent to enter into a contract to modify the written construction schedule. We agree with the trial court's analysis that, because the CO never expressed its intent to be bound by a contract, Harbert/Lummus has failed to demonstrate that such a contract was formed. We have considered Harbert/Lummus' other arguments with respect to the existence of this contract and find them to be without merit.

### CONCLUSION

For the foregoing reasons, we *reverse* the judgment of the trial court with respect to its recognition of a binding oral, unilateral contract between the government and Harbert/Lummus and therefore we *vacate* the trial court's damages award for breach of this contract. We *affirm* the judgment of the trial court with respect to its finding that DOE was not contractually bound to an accelerated construction and payment schedule.

*AFFIRMED–IN–PART, REVERSED–IN–PART*, and *VACATED–IN–PART*.

### COSTS

Each party to bear its own costs.