**FIFTH THIRD BANK OF WESTERN OHIO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–503C.**

United States Court of Federal Claims.

June 12, 2002.

---

Alan M. Grimaldi, Washington, DC, for plaintiff. Robert M. Bruskin, Timothy K. Armstrong, Alexander B. Berger, and Grace Graham, Howrey, Simon, Arnold & White, LLP, of counsel. Tina Woods, Fifth Third Bank of Western Ohio, Dayton, OH, of counsel.

David A. Levitt and Brian A. Mizoguchi, Jr., Washington, DC, with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. Claire McGuire, FDIC, of counsel.

## ORDER

MILLER, Judge.

Before the court is Defendant's Motion for Reconsideration of the April 12, 2002 Ruling. Defendant charges that the court erred in finding that defendant had abandoned the issue of authority and in concluding that the issue had been resolved by binding precedent. Argument is deemed unnecessary.

*United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), is the predicate for this case, the facts of which are set forth in *Fifth Third Bank of W. Ohio v. United States*, 52 Fed.Cl. 264 (2002).

The court welcomes motions for reconsideration or clarification in the endeavor to correct errors within the least amount of time and at the least effort to the parties and their counsel. Nevertheless, "motions for reconsideration should not be entertained 'upon

the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" *Seldovia Native Ass'n Inc. v. United States*, 36 Fed.Cl. 593, 594 (1996) (quoting *Roche v. District of Columbia*, 18 Ct.Cl. 289, 290 (1883)). This showing, under RCFC 59, must be based upon manifest error of law or mistake of fact and is not intended to give an unhappy litigant an additional chance to sway the court. *Seldovia*, 36 Fed.Cl. at 594; *Aerolease Long Beach v. United States*, 31 Fed.Cl. 342, 376 (1994), *aff'd*, 39 F.3d 1198, 1994 WL 572795 (1994) (unpublished table decision). To sustain its burden, the movant must show that an intervening change in the controlling law has occurred, that previously unavailable evidence is now available, or that the motion is necessary to prevent manifest injustice. *Seldovia*, 36 Fed.Cl. at 594; *Aerolease*, 31 Fed. Cl. at 376.

In its April 12 opinion denying the parties' cross-motions for summary judgment, the court limited itself to the issue of the parties' mutual intent to contract. *Fifth Third*, 52 Fed.Cl. at 269. In a footnote, the court observed:

> Defendant appears to have abandoned an earlier challenge to the authority of [the Federal Home Loan Bank of Cincinnati ("FHLB–Cincinnati")] to make promises regarding regulatory accounting. It is clear that FHLB–Cincinnati had authority to approve transactions in which goodwill would be included in assets in order to satisfy regulatory capital. Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. 8152 (1982). While the court is not aware of any express contractual authority similar to that relied on by *Winstar*, 518 U.S. at 890–91, 116 S.Ct. 2432 (citing 12 U.S.C. § 1729(f) (1989)), the Federal Circuit emphatically ruled on this

issue in *Cal. Fed. Bank. FSB v. United States ("CalFed")*, 245 F.3d 1342, 1347 (Fed.Cir.2001). *See also CalFed*, 39 Fed. Cl. 753, 776–77 (1997).

*Fifth Third*, 52 Fed.Cl. at 269 n. 9. The court therefore determined: (1) that defendant had abandoned an earlier challenge to FHLB–Cincinnati's authority, and (2) that such a challenge nonetheless was precluded by the Federal Circuit's decision in *CalFed*. Two months' hindsight and defendant's relentless efforts to win a *Winstar* case on liability as a matter of law—in the face of upsetting a decision that all liability issues must be tried—persuade the court that these rulings cannot stand.

### 1. *Abandonment*

■ Plaintiff's "Short Form" Motion for Partial Summary Judgment on Liability was filed on April 2, 1998. Defendant's Supplemental Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross–Motion To Dismiss and for Summary Judgment Regarding Liability was filed on October 10, 2000. In its cross-motion, defendant challenged the authority of FHLB–Cincinnati to enter into any contract with plaintiff. Defendant addressed this issue again in its January 16, 2001 reply. Although the Federal Circuit issued its opinion in *CalFed* on April 3, 2001, defendant declined to address the issue and the impact of *CalFed* in its May 8, 2001 sur-rebuttal and in its February 25, 2002 supplemental brief.[1]

Because the last mention of defendant's authority argument occurred over a year ago, and did not appear in either of defendant's more recent submissions, the court concluded that defendant appeared to have abandoned it. As defendant points out in its motion for reconsideration, however, it was not obliged to repeat the argument in its May 8, 2001 surrebuttal. Similarly, although the court is surprised that defendant did not raise the

---

1. On February 4, 2002, after assignment to this judge, the court ordered the parties to submit short supplements to their cross-motions in order to address any decisions that had been issued since their briefs were filed. Defendant did not discuss the authority of FHLB–Cincinnati to enter into contracts with failing thrifts in its supplement, nor did defendant discuss the Federal

Circuit's decision on this issue in *CalFed*. Defendant did challenge the Government's authority to enter into contracts with thrifts that were not insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"), a challenge that duly was noted in the court's April 12, 2002 opinion and that remains a live dispute today. *See Fifth Third*, 52 Fed.Cl. at 269–70 n. 9.

issue in its supplemental brief—if for no other reason than to distinguish *CalFed* with the arguments it now raises in its motion for reconsideration—defendant was not obliged to raise or lose any argument in its supplemental brief. The court therefore erroneously concluded that defendant had abandoned its argument as to FHLB–Cincinnati's authority. The issue was properly before the court by virtue of defendant's cross-motion and reply. Failure to correct this error will result in a manifest injustice for two reasons that perhaps are unique to the *Winstar* maelstrom: First, because the briefing of these issues has been fractured, the history of what thrusts and parries were made at what time should not affect the parties' fundamental rights to litigate the issues. Second, the Federal Circuit's opinion in *CalFed* is a palimpsest with respect to Chief Judge Smith's decision in *CalFed. See Fifth Third*, 52 Fed. Cl. at 275–76. In such circumstances it would be unfair not to consider all legitimate legal arguments that help the court apply the correct law to the facts.

### 2. *The Federal Circuit's decision in CalFed*

The court's April 12 opinion also concluded that the Federal Circuit had resolved the issue of FHLB–Cincinnati's authority in favor of plaintiffs.

After the Supreme Court's decision in *Winstar*, and over the Government's objection, Chief Judge Smith consolidated four "sample" cases in order to consider recurring liability issues in one proceeding. *See CalFed*, 39 Fed.Cl. at 754–56. After extensive briefing and extended oral argument, the court issued a ruling on 12 issues common to *California Federal Bank, FSB v. United States* (92–138C), *Landmark Land Co. v. United States* (95–502C), *LaSalle Talman Bank, FSB v. United States* (92–652C), and *Suess v. United States* (90–918C). Issue Number 10 in *CalFed* was framed, as follows:

> Where a capital contract was made between a thrift acquiror and a [Federal Home Loan Bank Board ("FHLBB")] Principal Supervisory Agent ("PSA") located at a regional Federal Home Loan Bank rather than with a Bank Board official geographically located at the Federal Home Loan Bank Board in Washington, no contract can exist *per se* because no Principal Supervisory Agent had authority to make such a contract with a thrift acquiror.

*Id.* at 776. As noted in the court's April 12 opinion, *CalFed* concluded that PSAs did possess the authority to bind the Government to assume the risk of a change in regulatory accounting requirements.

Of the four cases decided in *CalFed*, only one plaintiff—*CalFed*, itself—appealed the decision of the trial court. However, Issue Number 10 was only relevant to the case of *Suess v. United States* and therefore was neither appealed by CalFed nor discussed in the parties' appellate briefs. Accordingly, the Federal Circuit's affirmation could not constitute an opinion on Issue Number 10, and this court erred in stating otherwise.

### 3. *The parties' cross-motions for summary judgment*

Having reconsidered the court's decision that defendant abandoned its challenge to FHLB–Cincinnati's authority and that the Federal Circuit's decision in *CalFed* otherwise controls, the court necessarily must also reconsider its decision on the parties' cross-motions for summary judgment.

■ An indispensable element of a contract with the Government is the actual authority of the government representative whose conduct is relied upon to bind the Government in contract. *Lewis v. United States*, 70 F.3d 597, 600 (Fed.Cir.1995); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990). Genuine disputes over material facts that may significantly affect the resolution of this element preclude an entry of judgment on the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Although actual authority may be express or implied, a contract with the Government may not be based on "apparent" authority. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989). The authority of FHLBB and FSLIC to make promises regarding the treatment of supervi-

sory goodwill is their power to guarantee insured thrifts from losses arising from the acquisition of failing insured thrifts. 12 U.S.C. § 1729(f)(2) (repealed); *Winstar*, 518 U.S. at 890–91, 116 S.Ct. 2432; *CalFed*, 245 F.3d at 1347. Plaintiff has not identified a statute or regulation that constitutes an affirmative, express delegation of this authority to the regional PSAs.

 Plaintiff relies on Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. 8152 (Feb. 25, 1982) (the "1982 delegation"), which gives the regional banks the authority to approve transactions in which goodwill would be included in assets in order to satisfy regulatory capital. Unlike section 1729(f)(2), the portion of that regulation concerning the treatment of supervisory goodwill is not cast in terms that unambiguously denote contractual authority. Instead, the pertinent language nominally refers only to FHLBB's regulatory authority.[2]

The absence of express contractual authority does not end the inquiry. "Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a government employee." *H. Landau*, 886 F.2d at 324 (alteration in original) (quoting JOHN CIBINIC & RALPH C. NASH, FORMATION OF GOVERNMENT CONTRACTS 96 (3d ed.1998)). Plaintiff argues that the authority to enter into contracts regarding supervisory goodwill is implicit in the authority to approve transactions in which supervisory goodwill is generated.

To understand plaintiff's argument, the 1982 delegation must be viewed within the broader time period in which is was made. As the thrift crisis worsened, FHLBB incrementally expanded the regional banks' authority to approve supervisory mergers. This expansion of the PSA's authority generally follows FHLBB's intensifying reliance on healthy thrifts to forestall FSLIC liabilities.

*See generally Winstar*, 518 U.S. at 847–48, 116 S.Ct. 2432; Voluntary Assisted Merger Program, 48 Fed.Reg. 27,374 (June 15, 1983); Memorandum from H. Brent Beasley to Supervisory Agents (Feb. 2, 1982). At first, PSAs were given limited authority to approve routine transactions that raised little or no policy concerns for FHLBB. Amendment Relating to Merger Applications, 41 Fed.Reg. 9131, 9132 (Mar. 3, 1976) (delegating to PSAs authority "to approve certain merger applications where, because of the size of the merging associations and portion of the market involved, there would be no significant legal or economic anticompetitive impact").

In 1980–81 FHLBB expanded the PSA's authority to allow them to approve larger transactions. Delegation of Authority Regarding Merger Approvals, 46 Fed.Reg. 14,-727 (Mar. 2, 1981); Amendments Regarding Mergers, 45 Fed.Reg. 50,553 (July 30, 1980). On July 22, 1981, the regional banks were delegated authority to approve certain supervisory mergers:

> [T]he board has determined that, as a general rule, it need review only those supervisory mergers, otherwise qualifying for approval under delegated authority, that involve an agreement with the Federal Savings and Loan Insurance Corporation or require forbearance with respect to supervisory action under the regulations.

Delegation of Authority Regarding Merger Approvals, 46 Fed.Reg. 37,628, 37,629 (July 22, 1981). In the 1982 delegation, FHLBB delegated authority to PSAs to "agree to certain forbearances in approving supervisory mergers which are currently granted by the board." 47 Fed.Reg. at 8152. And in 1983 the regional banks were delegated authority to negotiate and approve certain mergers and acquisitions of eligible institutions and to authorize financial assistance from the FSLIC to facilitate such mergers or

---

2. The court respectfully disagrees with Chief Judge Smith's conclusion in *CalFed* that "the power to approve mergers in which supervisory goodwill was included in assets for regulatory net worth purposes would have been all but meaningless without the power to contract." 39 Fed.Cl. at 777. As discussed in the court's April 12 opinion, the power to approve and disapprove mergers is not inherently fused with the Government's contractual authority. *See Fifth Third*, 52 Fed.Cl. at 270–71. Moreover, the record in this case reveals the real possibility that a healthy thrift would have acquired a failing thrift without being promised the regulatory accounting treatment offered to the plaintiffs in *Winstar*. *Id.* at 276–77.

acquisitions. Voluntary Assisted–Merger Program, 48 Fed.Reg. at 27,376.

Defendant responds that no implied delegation can be found because the same regulations expressly prohibit PSAs from approving transactions involving "any agreement with the Federal Savings and Loan Insurance Corporation." *E.g.*, Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. at 8153 (codified at 12 C.F.R. § 546.2(h)(8) (repealed)). According to defendant, "[a] goodwill contract is, by definition, an agreement between the acquiring institution and FSLIC." Def.'s Br. filed Apr. 26, 2002, at 5. The court does not accept the premise of defendant's argument that the contract claimed by plaintiffs is necessarily an agreement with FSLIC. Instead, the plain meaning of the limitation on PSA's authority concerns agreements to which FSLIC was a party—the paradigm being the assisted transaction, in which FSLIC provided a cash contribution to facilitate the acquisition of a failing thrift. This language cannot operate to prevent PSAs from negotiating and executing any contracts, for the 1982 delegation provided PSAs express authority to enter into forbearance agreements. 47 Fed.Reg. at 8152–53 (PSAs authorized to "agree to the following conditions with respect to regulatory enforcement"). Moreover, in 1983 the regional banks expressly were empowered to authorize FSLIC assistance in certain situations. Voluntary Assisted–Merger Program, 48 Fed.Reg. at 27,374. Thus, the series of delegations recounted above illustrate FHLBB's intent to have the regional banks negotiate and execute a variety of agreements with FHLBB and FSLIC.

The finer question is therefore whether the authority to promise to allow supervisory goodwill to be included in assets was integral to the duties of PSAs in April 1982 when FHLB–Cincinnati approved the first transaction at issue in this case. As discussed above, PSAs had express authority to enter into certain forbearance agreements, but not assistance agreements. Language pertaining to the use of goodwill to meet regulatory requirements was cast in purely regulatory terms.

All other things being equal, an express delegation of specific, limited contractual authority precludes any implication of broader authority. The focus of these regulations, however, was to "facilitate successful mergers and [to serve] the interests both of the public and of the savings and loan industry." Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. at 8152. In 1981 FHLBB determined that it would not review supervisory mergers qualifying for approval under delegated authority, unless those transactions involved an agreement with FSLIC or a forbearance agreement. In 1982 FHLBB included mergers in which goodwill was included in assets among the transactions qualifying for approval under delegated authority. Accordingly, FHLBB's intention was not to review supervisory mergers in which goodwill was included in assets.[3] Simultaneously, however, FHLBB embraced the use of contractual incentives to encourage the acquisition of failing thrifts. As the Supreme Court plurality in *Winstar* recognized, because FSLIC had insufficient funds to directly assist every desired transaction, "the Bank Board had to offer a 'cash substitute' to induce a healthy thrift to assume a failed thrift's obligations." 518 U.S. at 849–50, 116 S.Ct. 2432. Allowing thrifts to account for transactions using the purchase method of accounting, amortizing the resulting goodwill over its estimated useful life, and counting that goodwill towards regulato-

---

**3.** The applicable regulations also provided: "It is expected that when a merger subject to this delegation raises significant issues of law or policy for which the corporation has not established a formal position, the [PSA] will refer that merger application to the Corporation for its consideration." 12 C.F.R. § 546.2(h) (repealed); Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. at 8153. FHLBB had detailed a formal position regarding the use of supervisory goodwill in memoranda R–31b and SP–24. *Wins-*

*tar v. United States*, 64 F.3d 1531, 1541 (Fed.Cir. 1995) (en banc); Delegation of Authority Regarding Merger Approvals, 47 Fed.Reg. at 8153; *see also* Processing of Applications, 48 Fed.Reg. 178, 183 (Jan. 3, 1983) (giving examples of types of mergers that should be referred to FHLBB and placing mergers in which goodwill is included in assets in order to meet net worth among those deemed approved 30 days after notice of completion of application).

ry capital provided an adequate substitute that was "essential" to the transactions in *Winstar. Id.* at 849, 116 S.Ct. 2432. Without such contractual incentives, economic circumstances would have prevented the consummation of many transactions desired by FHLBB. *E.g., id.* at 863–64, 116 S.Ct. 2432.

The ability of the regional banks to make promises regarding the use of supervisory goodwill therefore was integral to fulfilling their role in FHLBB's policy to encourage the private acquisition of failing thrifts. The court finds that, as of the 1982 delegation, FHLB–Cincinnati had implied actual authority to bind FHLBB to promises regarding the amortization and use of supervisory goodwill contained in plaintiff's applications.[4] This conclusion is consistent with FHLBB's stated intent not to review supervisory mergers in which goodwill was included in assets.

■ Plaintiffs also may avoid relying on the PSA's actual authority by establishing ratification. To do so, plaintiffs must establish that a representative with (1) authority and (2) actual or constructive knowledge of the facts upon which the unauthorized action was taken, (3) demonstrated acceptance of the contract. *Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1433–34 (Fed.Cir.1998); *Humlen v. United States,* 49 Fed.Cl. 497, 504–05 (2001).

With the exception of the Sentry Savings and Loan Company transaction, which is the subject of a separate motion to dismiss, *CalFed* establishes that the Bank Board had authority to approve the contracts at issue in this case. 245 F.3d at 1347 (citing 12 U.S.C. § 1729(f)(2)(A) (repealed)). The contracts at issue in *CalFed* were predicated on a similar record of communications between FHLBB and the plaintiff, with the addition of explicit, written forbearance letters from FHLBB detailing the accounting treatment that would be accorded.

It remains disputed, however, whether FHLBB had actual or constructive knowledge of any promises made by FHLB–Cincinnati to plaintiff. Similarly, it remains

disputed whether FHLBB demonstrated acceptance of the contract. Silence, in and of itself, will not support ratification. *Harbert/Lummus,* 142 F.3d at 1434. Resolution of these disputes likely will turn on facts supporting the existence of promises made by FHLB–Cincinnati, as well as FHLB–Cincinnati's implementation FHLBB's national policy of inducing healthy thrifts to acquire failing thrifts. Although the court determines that FHLB–Cincinnati had implied actual authority to execute the contracts asserted by plaintiff, plaintiff is encouraged to create a record that also establishes ratification by FHLBB and thereby present a complete record should an appeal be taken. Accordingly,

**IT IS ORDERED,** as follows:

1. Defendant's motion for reconsideration is granted. The court hereby amends its April 12, 2002 opinion to strike the first paragraph of footnote 9 in its entirety and to substitute a cross-reference to this order.

2. The court this date transmitted a copy of this order to counsel by facsimile transmission.

---

**4.** This finding is consistent with Chief Judge Smith's opinion in *CalFed,* which, while finding an express delegation of authority, alternatively noted that arguments regarding an implied delegation or ratification were persuasive. 39 Fed. Cl. at 777 n. 28.