Sammie THOMPSON and Jenetta Thompson, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 11–269 C.

United States Court of Federal Claims.

Nov. 16, 2011.

Sammie Thompson and Jenetta Thompson, Moreno Valley, CA, pro se.

Nicholas Jabbour, United States Department of Justice, Washington, DC, for defendant. Vanessa A. Burton, United States Department of Education, Washington, DC, of counsel.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court are plaintiffs' request to proceed *in forma pauperis* and defendant's motion to dismiss. In this case, plaintiffs allege that the California Student Aid Commission, known as EdFund, "erroneously charged duplicate billing" in the amount of $11,848.98 and refused to issue a refund to plaintiffs. Defendant moves to dismiss the *pro se* complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing, among other things, that plaintiffs do not identify a source of substantive law that creates a right to money damages against the United States. Alternatively, defendant moves to dismiss for failure to state a claim pursuant to RCFC 12(b)(6) because plaintiffs do not identify any wrongful conduct by the United States. The court notes that plaintiffs did not respond to defendant's motion to dismiss. Although the court afforded plaintiffs ample opportunity to file a response brief, they did not do so, and the court determines that, given plaintiffs' silence, there is no reason to delay its ruling. For the reasons set forth below, plaintiffs' request to proceed *in forma pauperis* is de-

nied, and defendant's motion to dismiss is granted.

## I. BACKGROUND[1]

At some point prior to October 1998, plaintiff Jenetta Thompson submitted to EdFund an application for a loan consolidation. Compl. 1. On October 20, 1998, plaintiff Sammie Thompson, apparently unaware that Ms. Thompson submitted a loan consolidation application, sent a payment in the amount of $11,848.98 to EdFund. *Id.* Ms. Thompson's loan consolidation occurred on August 2, 1999. Def.'s Ex. A at 1. According to plaintiffs, Mr. Thompson sought, but was denied, a refund of the monies he paid in October 1998. Compl. 1. Prior to November 16, 2001, Ms. Thompson sued EdFund in small claims court because there appeared to be a disagreement over how the $11,848.98 payment should have been applied to Ms. Thompson's loans prior to their consolidation. Def.'s Ex. A at 1–2. At the time plaintiffs submitted the payment at issue to EdFund, Ms. Thompson did not give EdFund instructions regarding how the payment should be applied to four loans that had outstanding balances. *Id.* at 1. Consequently, EdFund applied the payment to all four loans. *Id.* On November 16, 2001, EdFund, in an effort to resolve the then-pending litigation and in consideration of the dismissal of Ms. Thompson's complaint, reapplied the payment in a manner desired by Ms. Thompson. *Id.;* Def.'s Ex. B at 2.

In 2005, Ms. Thompson contacted the United States Department of Education ("Department of Education") and requested that her consolidated loan balance be adjusted. Def.'s Ex. B at 1. In a November 29, 2005 letter to Ms. Thompson, Anne Curry, Ombudsman Liaison Specialist within the Collections Customer Care Team at the Department of Education, stated that there was no justification for reducing the consolidated loan balance. *Id.* at 2. On May 2, 2011, plaintiffs filed their complaint in the United States Court of Federal Claims ("Court of Federal Claims") seeking a refund in the amount of $11,848.98 plus $19,920.00 in interest. Compl. 2.

## II. MOTIONS TO PROCEED *IN FORMA PAUPERIS*

█ Plaintiffs submitted a request to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 1915, courts of the United States are authorized to waive filing fees or security under certain circumstances.[2] The statute provides, in relevant part:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Subsection (b), which addresses requirements for prisoners bringing a civil action or filing an appeal, is not applicable here.[3] Plaintiffs did not submit a formal application to proceed *in forma pauperis. See* Application Proceed *In For-*

---

1. The facts are derived from the complaint ("Compl.") and two exhibits appended to defendant's motion to dismiss ("Def.'s Ex.").

2. While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis. See* 28 U.S.C. § 2503(d) (2006) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States,* 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

3. The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," which "raises the issue of whether it applies to both prisoners and non-prisoners." *Hayes v. United States,* 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.* at 367.

*ma Pauperis, available at* http://www.uscfc. uscourts.gov/sites/default/files/court_info/ informapauperis.pdf (last visited Nov. 15, 2011). The formal application to proceed *in forma pauperis* requires an applicant to declare, under penalty of perjury, the financial basis for the request by setting forth, among other things, the applicant's (1) employment status, (2) amount of salary or wages currently or previously earned, (3) sources of income within the past twelve months, and (4) ownership in any cash, real estate, or other valuable property savings. *See id.; cf.* 28 U.S.C. § 1915(a)(1) (requiring the submission of an affidavit that includes a statement of all assets). Based upon the information provided by an applicant, the court can make an appropriate determination of whether the applicant may proceed *in forma pauperis.* In this case, the court is unable to make any such determination. Plaintiffs declare, without elaboration or explanation, that they "can not [sic] afford to pay for the filing of their claim," Pls.' Request *In Forma Pauperis* 1, but fail to provide any information about their assets, as required by statute. Because the court is unable to determine plaintiffs' financial status, it must deny their request to proceed *in forma pauperis.*

## III. LEGAL STANDARDS

### A. *Pro Se* Plaintiffs

The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969). Although plaintiffs' pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.");

*Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004). As the Court of Federal Claims stated in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Matthews,* 72 Fed.Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

■ The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Thus, unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767.

■ The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Con-

stitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc portion). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc).

### C.  Statute of Limitations

Statutes of limitations "are vital to the welfare of society and are favored in the law." *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim under the Tucker Act accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct.Cl.1966)). The statute of limitations barring actions against the United States "is jurisdictional, because filing within the six-year period is a condition of the waiver of sovereign immunity in the Court of Federal Claims under the Tucker Act." *Sabree v. United States*, 90 Fed.Cl. 683, 691 (2009); *accord John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed.Cir. 2006), *aff'd*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). As such, section 2501 must be "strictly construed." *Hopland Band*

*of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988).

### D.  Motion to Dismiss

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). The court's "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999). When deciding an RCFC 12(b)(1) motion to dismiss, the court assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006).

The burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it, *see McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and a plaintiff must establish jurisdiction by a preponderance of the evidence, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. *See McNutt*, 298 U.S. at 189, 56 S.Ct. 780. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds*, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews*, 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV.  DISCUSSION

### A.  The Court Lacks Jurisdiction Over the Complaint

As stated above, plaintiffs must identify a source of substantive law that creates a

right to monetary relief against the United States in order to invoke the court's Tucker Act jurisdiction. Plaintiffs have not done so, failing to identify any statute or constitutional provision that affords them a right to monetary relief. One statute plaintiffs cite, the Improper Payments Information Act of 2002 ("IPIA"), Pub.L. No. 107–300, 116 Stat. 2350, does not create a private right of action against the United States. Instead, the IPIA requires that agencies take various steps to identify, estimate, and recover their own improper payments. *See, e.g.,* § 2(a), 116 Stat. at 2350 (requiring the head of each agency to "annually review all programs and activities . . . and identify all such programs and activities that may be susceptible to significant improper payments").[4] The IPIA is not a money-mandating statutory provision, and the court cannot assert jurisdiction over plaintiffs' complaint based upon the IPIA.

■ Plaintiffs also reference the Contract Disputes Act of 1978 ("CDA") in their complaint. The Tucker Act waives sovereign immunity to allow jurisdiction over claims founded upon either "express or implied" contracts with the United States, 28 U.S.C. § 1491(a)(1), and the Court of Federal Claims possesses jurisdiction over claims brought under the CDA, *id.* § 1491(a)(2), which also constitutes a waiver of sovereign immunity. *Winter v. FloorPro, Inc.,* 570 F.3d 1367, 1370 (Fed.Cir.2009). In order to invoke jurisdiction based upon an express or implied-in-fact contract, a plaintiff must allege all the requisite elements of a contract with the United States, *see Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1434 (Fed.Cir.1998); *accord Peninsula Group Capital Corp. v. United States,* 93 Fed.Cl. 720, 731 (2010) (indicating that an implied-in-fact contract "requires the existence of the same elements as an express contract"), which consist of "a mutual intent to contract including offer, acceptance, and consideration," *Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed. Cir.1997). "A contract with the United States also requires that the Government

representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir. 1997). Thus, "[a]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Id.* Furthermore, a CDA claim "requires a crucial element," *viz.,* an express or implied-in-fact contract "between a *contractor* and the government." *Res. Recycling Corp. v. United States,* 56 Fed.Cl. 612, 616 (2003).

■ While the court does possesses jurisdiction over CDA claims, plaintiffs fail to allege such a claim here. Plaintiffs do not allege the existence of any express or implied-in-fact contract between them and the United States. Plaintiffs also do not allege facts demonstrating the existence of any elements required for contract formation. Furthermore, "[u]nder the CDA, this Court's jurisdiction is predicated upon a *contractor* meeting two fundamental requirements: (1) the submission of a written claim to the contracting officer and (2) the agency's issuance of a final decision." *OK's Cascade Co. v. United States,* 87 Fed.Cl. 739, 745 (2009) (emphasis added). Plaintiffs do not allege that they are contractors such that their claim might be construed under the CDA.

Pursuant to RCFC 9(k), a party pleading a claim founded on a contract "must identify the substantive provisions of the contract . . . on which the party relies." Plaintiffs have not done so here. Indeed, their entire dispute is between them and EdFund, a California agency. Because plaintiffs do not allege any requisite elements of a contract between them and the United States, *Harbert/Lummus Agrifuels Projects,* 142 F.3d at 1434; *Trauma Serv. Group,* 104 F.3d at 1325, the court lacks jurisdiction over plaintiffs' contract claim.

---

4. The IPIA was amended by the Improper Payments Elimination and Recovery Act of 2010, which still requires that agency heads "periodically review all programs and activities that [they] administer[ ] and identify all programs and activities that may be susceptible to significant improper payments." Pub.L. No. 111–204, § 2(a), 124 Stat. 2224, 2224.

Even if the court possessed jurisdiction to grant the relief requested by plaintiffs, *viz.*, reimbursement of their purported $11,848.98 "overpayment" to EdFund, it would be unable to do so due to the statute of limitations. Claims against the United States that are filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501. The United States Supreme Court held that 28 U.S.C. § 2501 is a "special statute of limitations" for claims against the United States that provides an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a case. *John R. Sand & Gravel Co.*, 552 U.S. at 132–35, 128 S.Ct. 750. Plaintiffs submitted the payment at issue to EdFund on October 20, 1998, and Ms. Thompson's loan was consolidated on August 2, 1999. Since plaintiffs claim that their purported "overpayment" occurred as a result of these events, their claim accrued no later than August 2, 1999. Plaintiffs were certainly aware of their claim, having filed suit in small claims court at some point prior to November 16, 2001. Nevertheless, plaintiffs did not file suit in the Court of Federal Claims until May 2, 2011, well beyond the six-year statute of limitations applicable in this court. Accordingly, plaintiffs' complaint is time-barred.

For these reasons, defendant's motion to dismiss plaintiffs' purported contract claim pursuant to RCFC 12(b)(1) is granted, and the court need not address any alternative arguments in support of dismissal pursuant to RCFC 12(b)(6).

## B. Transfer to a Federal District Court is Inappropriate

"When a court lacks jurisdiction, the ordinary course is ... to dismiss...." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999). Nevertheless, a court must transfer a claim over which it lacks jurisdiction to a court where it could have been brought under certain circumstances:

Whenever a civil action is filed in a court as defined in section 610 of this title ...

and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought.[5]

28 U.S.C. § 1631 (footnote added). Thus, in order to transfer a case, the court must determine that (1) it lacks subject matter jurisdiction; (2) at the time the case was filed, the case could have been brought in the transferee court; and (3) transfer is in the interest of justice. *Id.; United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 n. 5, 1374 (Fed.Cir.1983) (en banc). A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Faulkner v. United States*, 43 Fed.Cl. 54, 56 (1999) (*quoting Siegal v. United States*, 38 Fed.Cl. 386, 390 (1997)).

The court cannot transfer plaintiffs' claim to another court. First, plaintiffs do not bring an action "arising under the Constitution, laws, or treaties of the United States" such that the federal district courts have jurisdiction. 28 U.S.C. § 1331. Second, plaintiffs have not satisfied the requirements for bringing any state claim that they may have against EdFund in a diversity action in district court. *Id.* § 1332(a); *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 197 (2d Cir.1967) (stating that "diversity of citizenship must be apparent from the pleadings" in cases upon which diversity jurisdiction is based). Third, the court lacks the authority to transfer plaintiffs' claim to a state court because "no state court falls within the definition" set forth in 28 U.S.C. § 610. *Mendez–Cardenas v. United States*, 88 Fed. Cl. 162, 168 (2009); *supra* note 5.

## V. CONCLUSION

For the reasons set forth above, plaintiffs have failed to identify a source of substantive law that creates a right to monetary damages against the United States and bring a claim

---

5. Under 28 U.S.C. § 610, the term "court" includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade."

that is time-barred. The court, therefore, lacks subject matter jurisdiction over the complaint. Accordingly, plaintiffs' request to proceed *in forma pauperis* is **DENIED,** and defendant's motion to dismiss is **GRANTED.** The clerk is directed to **DISMISS WITH-OUT PREJUDICE** the complaint and to enter judgment accordingly. No costs.

IT IS SO ORDERED.